Roger C. Hsu - SBN 170589
rchlaw@att.net
Joseph M. Liu - SBN 220938
joseph@liu.net
LAW OFFICES OF ROGER C. HSU
175 South Lake Avenue, Suite 210
Pasadena, CA 91101
Telephone:  (626) 792-7936
Facsimile:  (626) 685-2859

Attorneys for Plaintiff Interworks Unlimited, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Interworks Unlimited, Inc., a California corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Hangzhou Chic Intelligent Technology Co., Ltd., a Chinese company,<br><br>　　　　Defendant. | Case No.  2:19-cv-00665<br><br>**COMPLAINT FOR:**<br><br>1.　BREACH OF CONTRACT<br>2.　BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING<br>3.　BREACH OF IMPLIED WARRANTY FOR MERCHANTABILITY<br>4.　BREACH OF IMPLIED WARRANTY FOR PARTICULAR PURPOSE<br>5.　EXPRESS INDEMNIFICATION<br>6.　IMPLIED CONTRACTUAL INDEMNIFICATION<br>7.　ABUSE OF PROCESS<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Interworks Unlimited, Inc. (hereinafter the "Plaintiff") hereby alleges and complains against Defendant Hangzhou Chic Intelligent Technology Co., Ltd. (hereafter the "Defendant") as follows:

# I.

## JURISDICTION AND VENUE

1.   Jurisdiction is predicated upon 28 U.S.C. § 1332(a)(2) in that this action is between a citizen or subject of this State and a citizen or subject of a foreign state, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2.   The Central District of California is the proper venue for this matter pursuant to 28 U.S.C. § 1391(b) because, as set forth below, the parties agreed to this district as the proper venue and a substantial part of the events and omissions giving rise to this action occurred in the County of Los Angeles, California.

3.   The Defendant purposely availed itself to this jurisdiction through a number of contacts with and substantial business activities in this district.  This includes, without limitation,: (1) entering into an agreement which is at issue in this case, where the Defendant agreed that the United States District Court in or around Los Angeles, California would be the exclusive jurisdiction and venue for any action arising out of or relating to that agreement; (2) initiating a business relationship with the Plaintiff being fully aware that its office was located in the City of Industry, Los Angeles County ("Industry Office"); (3) submitting invoices to the Plaintiff at the Plaintiff's Industry Office; (4) receiving payments from the Plaintiff at the Plaintiff's Industry Office; (5) contacting or submitting inquiries to the Plaintiff at the Plaintiff's

Industry Office; (6) selling the Plaintiff over seven million dollars worth of merchandise since 2016; and (7) causing the Plaintiff to sustain more than five million dollars in damages a result of Defendant's wrongful acts, defective merchandise, breach of the parties' agreement.

## II.

### PARTIES

4.   The Plaintiff is, at all relevant times, a corporation duly formed and existing under the laws of the State of California and is qualified and authorized to do business in California, with its principal place of business located in the City of Industry, County of Los Angeles.

5.   Based on information and belief, the Defendant is, at all relevant times, a Chinese corporation that is organized and existing under the laws of China, with its principal place of business in Hangzhou, China.

## III.

### FACTUAL ALLEGATIONS

6.   In or about May of 2016, the Plaintiff and Defendant entered into an exclusive distribution agreement in which the Plaintiff would buy from the Defendant a certain brand of hoverboard (the "Hoverboards").  The Plaintiff would have the sole and exclusive right to sell the Hoverboards to a number of retail accounts/customers in a agreed upon territory ("Distribution Agreement").

7.   As part of the Distribution Agreement, the Defendant agreed that for any of the Hoverboards that were returned to the Plaintiff from its customers, and are

Complaint

determined to be defective, along with any Hoverboards that were determined to be defective prior to sale, the Defendant would issue a credit to the Plaintiff on those defective hoverboards based on the amount the Plaintiff had paid for those boards plus any return freight charges.

8. Also, as part of the Distribution Agreement, the Defendant provided a number of express warranties including, without limitation, warranting that the Hoverboards, along with all related packaging, labeling and other printed matter and advertisements furnished or authorized by Defendant were to "(I) be free from defects in design, workmanship or materials including, without limitation, such defects as could create a hazard to life or property; ...(iii) suitable for end use; (iv) be manufactured, packed for shipment, marked with the country of origin, and where required, be registered, all in accordance with any federal, state, country or local law, rule, regulation or ordinance (the "Laws");(v) conform to all specifications and other descriptions set forth or incorporated in any contract documents and all articles accepted by [Plaintiff] or [its customers] as [Hoverboard] samples, as well as conform to all requirements set forth in any standards, procedures, testing manuals, guidelines, policies, specifications, instructions, and other documents which may, from time to time, be furnished or issued to [Defendant] by or on behalf of [the Plaintiff] or [its customers] and which are accepted by [the Defendant], regardless that it may impose different or more stringent standards than those set forth by the Laws

described herein;(vi) possess all performance qualities and
characteristics represented or claimed in advertisements
issued or authorized by [the Defendant]..[and]...d. do not
infringe upon or violate any patent, copyright, trademark,
trade name, trade dress, trade secret or, without
limitation, any other rights belonging to others, and all
royalties owed by Vendor, if any, have been paid to the
appropriate licensor..."

9.  The Defendant further agreed under the Distribution
Agreement to "deliver the [Hoverboards] in according with
[the Plaintiff's] instructions and shall fulfill all
purchase orders promptly and completely, but in any event no
later than the date specified in the purchase order."

10.  The Distribution Agreement also contained an
explicit indemnification clause in which the Defendant
agreed to indemnify the Plaintiff, its officers, directors,
employees and agents from lawsuits arising out of "the
infringement or alleged infringement of any United States
patent, trademark, trade dress, copyright or other
intellectual property or third party right...arising out of
the importation into the United States, or the intended use,
offering for sale or sale of the [Hoverboards]."

11.  Between May and September of 2016, the Plaintiff
ordered and received from the Defendant over 7 million
dollars worth of Hoverboards.

12.  As part of the agreement, on or about June 2 2016,
the Plaintiff deposited $867,600 for the Hoverboards and the
Defendant agreed to ship said boards within 45 days from the

1   date of deposit.

2       13.   The initial order of Hoverboards were shipped 75

3   to 80 days late, which caused the Plaintiff to receive a

4   number of sales cancellations and late penalty chargebacks

5   from its customers.

6       14.   Starting from November of 2016, after selling

7   number of the Hoverboards to its customers, the Plaintiff

8   began receiving a number of returns from those customers

9   because said boards were found to be defective.

10      15.  In all, the Plaintiff received over 2 million

11  dollars in returns from its customers as a result of the

12  Hoverboards being defective, and incurred over a hundred

13  thousand dollars in chargebacks from the returns.

14      16.   In or about 2016, the Defendant began licensing or

15  permitting the licensing of the patents for the Hoveboards

16  to other Chinese hoverboard manufacturers that Defendant

17  knew were selling hoveboards to retail accounts/customers in

18  the territory which the Plaintiff, as per the Distribution

19  Agreement, had the sole and exclusive right to sell.

20      17.   In or about 2016, one of the Plaintiff's sales

21  agent, along with the Defendant, were sued by a company

22  named Swagway, LLC. in a patent infringement case in

23  connection with the Hoveboards ("Swagway Lawsuit").

24      18.   Despite Plaintiff tendering its sales agent's

25  defense to the Defendant for the Swagway Lawsuit, the

26  Defendant refused to provide a defense or indemnify the

27  Plaintiff or its sales agent.

28      19.   In or about 2018, the Defendant initiated a

Complaint

lawsuit in China in connection with the Distribution
Agreement ("China Lawsuit"), despite the fact that the
parties agreed that Los Angeles County had jurisdiction over
any such suit.

20.  In the China Lawsuit, the Defendant committed a
series of fraudulent acts including, without limitation,
providing fake documents, submitting forged documents and/or
providing false information and evidence to the Chinese
Court.

21.  As a result of the foregoing fraudulent acts, the
Defendant obtained an improper judgment against the
Plaintiff, which has caused the Chinese government to issue
an exit ban against the Plaintiff's principal, Eric Lu ("Mr.
Lu").

**IV.**

**FIRST CLAIM**

**Against Defendant**

**FOR BREACH OF CONTRACT**

22.  Plaintiff refers to and incorporates hereat, by
this reference, as if fully set forth herein *seriatim* the
above paragraphs of this complaint.

23.  In the Distribution Agreement, there was an
agreement in which the Defendant agreed to provide the
Plaintiff with a credit for the Hoverboards it purchased
from the Defendant that were determined to be defective.

24.  The Defendant also provided in the Distribution
Agreement a number of express warranties for the Hoverboards
and related materials.

Complaint

25.   In addition, the Defendant agreed to deliver the Hoverboards in accordance with the Plaintiff's instructions.

26.   The Defendant also agreed to indemnify the Plaintiff from any lawsuits against it and its agents arising out of the infringement or alleged infringement of any United States patent in connection with the Hoverboards.

27.   Furthermore, the Defendant agreed that any lawsuit brought in connection to the Distribution Agreement would be filed in federal court in or around Los Angeles County.

28.   Plaintiff has performed all the terms and conditions of the Distribution Agreement and/or has been excused from such performance.

29.   The Defendant has breached the Distribution Agreement by failing to give the Plaintiff the agreed upon credit for the hoverboards it purchased from the Defendant that were determined to be defective.

30.   The Defendant has further breached the Distribution Agreement by providing the Plaintiff with defective hoverboards and failing to provide the Plaintiff with the required and/or compliant printed material, which constituted a breach of the express warranties provided by the Defendant under the Distribution Agreement.

31.   The Defendant also breached the Distribution Agreement by not delivering the Hoverboards within the agreed upon time period.

32.   Also, despite Plaintiff tendering its sales agent's defense to the Defendant in connection with the Swagway Lawsuit, the Defendant further breached the

Complaint

Distribution Agreement by failing to provide such a defense or indemnify the Plaintiff or its sales agent.

33.   Furthermore, the Defendant breached the Distribution Agreement by initiating the China Lawsuit in China, despite the parties agreeing that the federal court in or around Los Angeles County shall have exclusive jurisdiction over such suit.

34.   As a direct and proximate result of the foregoing breaches of the Distribution Agreement by the Defendant, Plaintiff has sustained actual, incidental and consequential damages totaling over five million dollars including, without limitation, the loss of sales, loss of future sales, and legal fees and costs.  The precise amount of damages sustained is within the jurisdictional limit of this Court and shall be determined at trial according to proof.

**V.**

**SECOND CLAIM**

**Against Defendant**

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

35.   Plaintiff refers to and incorporates hereat, by this reference, as if fully set forth herein seriatim the above paragraphs of this complaint.

36.   In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract.

37.   Plaintiff has performed all the terms and

conditions of the Distribution Agreement an/or has been excused from such performance, and all conditions required for Defendant's performance has occurred.

38.   The Defendant has breached its duty to act fairly and in good faith by licensing or permitting the licensing of its patent for the Hoverboard to other Chinese hoverboard factories that the Defendant knew were selling hoveboards to retail accounts/customers in the territory which the Plaintiff, as per the Distribution Agreement, had the sole and exclusive right to sell.

39.   Defendant has unfairly interfered with the Plaintiff's right to receive the benefits of the Distribution Agreement.

40.   As a direct and proximate result of the foregoing breach by the Defendant, Plaintiff has sustained actual, incidental and consequential damages including, without limitation, the loss of sales and loss of future sales.  The precise amount of damages sustained is within the jurisdictional limit of this Court and shall be determined at trial according to proof.

### THIRD CLAIM

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

41.   Plaintiff refers to and incorporates hereat, by this reference, as if fully set forth herein *seriatim* the above paragraphs of this complaint.

42.   Under CA Commercial Code §2314, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods

of that kind."

43.   Under that section "Goods to be merchantable must be at least such as (a) Pass without objection in the trade under the contract description;  and (b) In the case of fungible goods, are of fair average quality within the description;  and © Are fit for the ordinary purposes for which such goods are used;  and (d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;  and (e) Are adequately contained, packaged, and labeled as the agreement may require;  and (f) Conform to the promises or affirmations of fact made on the container or label if any."

44.   At all relevant times, the Defendant was a merchant with respect to the Hoverboards it sold to the Plaintiff, who was in the business of selling such hoverboards to retail buyers.

45.   The Defendant never disclaimed the implied warranty of merchantability in connection with the hoverboards it sold to the Plaintiff.

46.   The Defendant breached the implied warranty of merchantability because a number of the Hoverboards that the Plaintiff purchased from the Defendant were not of the same quality as those generally acceptable in the trade; were not fit for the ordinary purposes for which the goods are used; were not adequately contained, packaged, and/or labeled; and/or did not measure up to the promises or facts stated on the container or label.

47.   The Plaintiff took reasonable steps to notify the Defendant within a reasonable time that the hoverboards did not have the quality to be merchantable under CA Commercial Code §2314.

48.   As a direct and proximate result of the Defendant's breach of this warranty, Plaintiff has sustained actual, incidental and consequential damages including, without limitation, the loss of sales and loss of future sales.   The precise amount of damages sustained is within the jurisdictional limit of this Court and shall be determined at trial according to proof.

**VI.**

**FOURTH CLAIM**

**Implied Warranty of Fitness for Particular Purpose.**

**Against Defendant**

49.   Plaintiff refers to and incorporates hereat, by this reference, as if fully set forth herein seriatim the above paragraphs of this complaint.

50. Pursuant to CA Commercial Code §2315, "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section, an implied warranty that the goods shall be fit for such purpose."

51.   The Plaintiff purchased the Hoverboards, a consumer good, which were manufactured and/or distributed by the Defendant.

1    52.  At the time of purchase, the Defendant knew or

2  should have known that the Plaintiff intended to sell the

3  Hoverboards for a particular purpose.

4    53.  At the time of purchase, the Defendant knew or

5  should have known that the Plaintiff was relying on the

6  Defendant's skill and judgment to provide hoverboards that

7  were suitable for that particular purpose.

8    54.  The Plaintiff justifiably relied on the

9  Defendant's skill and judgment.

10    55.  The Defendant has breached the implied warranty of

11  fitness for a particular purpose because the Hoverboards

12  that the Defendant provided to the Plaintiff were defective

13  and not suitable for that particular purpose.

14    56.  The Defendant never disclaimed the implied

15  warranty of fitness for a particular purpose in connection

16  with the hoverboards it sold to the Plaintiff.

17    57.  The Plaintiff took reasonable steps to notify the

18  Defendant within a reasonable time that the Hoverboards did

19  not have the quality for a particular purpose under CA

20  Commercial Code §2315.

21    58.  As a direct and proximate result of the

22  Defendant's breach of this warranty, Plaintiff has sustained

23  actual, incidental and consequential damages including,

24  without limitation, the loss of sales and loss of future

25  sales.  The precise amount of damages sustained is within

26  the jurisdictional limit of this Court and shall be

27  determined at trial according to proof.

28                        **FIFTH CLAIM**

EXPRESS INDEMNIFICATION

**Against Defendant**

59.   Plaintiff refers to and incorporates hereat, by this reference, as if fully set forth herein seriatim the above paragraphs of this complaint.

60.   Distribution Agreement contained an express indemnification clause in which the Defendant agreed to indemnify the Plaintiff and its agents from any lawsuit relating to any infringement or alleged infringement of any United States Patent in connection with the Hoverboard.

61.   In 2016, the Plaintiff's sale representative and agent, along with the Defendant, were sued in the Swagway Lawsuit. For purposes of its allegations only, the operative complaints in the Swagway Lawsuit are incorporated herein.

62.   Based on information and belief, the Defendant was at fault in the Swagway Lawsuit because, amongst other things, for not using reasonable care and failing to comply with the terms of the Distribution Agreement, which cause one of the Plaintiff's agents to also get sued.

63.   The Plaintiff tendered its sales agent's defense to the Defendant but the Defendant failed to provide defense or indemnify the Plaintiff or its sales agent.

64.   This resulted directly in the Plaintiff sustaining damages, for which the Defendant is contractually responsible. Plaintiff has incurred attorney's fees, court costs and other costs in connection with defending its sales agent in the Swagway Lawsuit.

65.   If the Plaintiff's sales agent is held liable and

1   responsible to Swagway, LLC. for damages as alleged in its

2   operative complaint, it will be solely due to the conduct of

3   the Defendant.  Therefore, Plaintiff is entitled to be

4   indemnified by the Defendant should such liability arise.

5   66.  Plaintiff is entitled to complete indemnification

6   by the Defendant for any sum or sums for which its sale

7   agent may be adjudicated liable to Swagway, along with costs

8   of defense, costs of suit, and reasonable attorney's fees

9   incurred, the precise amount of damages sustained is within

10  the jurisdictional limit of this Court and shall be

11  determined at trial according to proof.

## SIXTH CLAIM

IMPLIED CONTRACTUAL INDEMNIFICATION

### Against Defendant

15  67.  Plaintiff refers to and incorporates hereat, by

16  this reference, as if fully set forth herein seriatim the

17  above paragraphs of this complaint.

18  68.  In 2016, the Plaintiff's sale representative and

19  agent, along with the Defendant, were sued in the Swagway

20  Lawsuit.  For purposes of its allegations only, the

21  operative complaints in the Swagway Lawsuit are incorporated

22  herein.

23  69.  Based on information and belief, the Defendant was

24  at fault in the Swagway Lawsuit for, amongst other things,

25  not using reasonable care and failing to comply with the

26  terms of the Distribution Agreement, which cause one of the

27  Plaintiff's agents to also get sued.

28  70.  The Plaintiff tendered its sales agent's defense

Complaint

1  to the Defendant but the Defendant failed to provide defense

2  or indemnify the Plaintiff or its sales agent.

3      71.  This resulted directly in the Plaintiff sustaining

4  damages, to which the Defendant is equitably and

5  contractually responsible. Plaintiff has incurred attorney's

6  fees, court costs and other costs in connection with

7  defending its sales agent in the Swagway Lawsuit.

8      72.  If the Plaintiff's sales agent is held liable and

9  responsible to Swagway, LLC. for damages as alleged in its

10  operative complaint, it will be solely due to the conduct of

11  the Defendant.  Therefore, Plaintiff is entitled to be

12  indemnified by the Defendant should such liability arise.

13      73.  Plaintiff is entitled to complete indemnification

14  by the Defendant for any sum or sums for which its sale

15  agent may be adjudicated liable to Swagway, along with costs

16  of defense, costs of suit, and reasonable attorney's fees

17  incurred, the precise amount of damages sustained is within

18  the jurisdictional limit of this Court and shall be

19  determined at trial according to proof.

20                **SEVENTH CLAIM**

21                ABUSE OF PROCESS

22                **Against Defendant**

23     74.  Plaintiff refers to and incorporates hereat, by

24  this reference, as if fully set forth herein seriatim the

25  above paragraphs of this complaint.

26     75.  In or about 2018, the Defendant intentionally

27  initiated the China Lawsuit and submitted false evidence in

28  order to obtain a judgment against the Plaintiff and Mr. Lu

76.  The Defendant committed such fraudulent acts for the improper purpose of having the Chinese government issue a Chinese Ban against Mr. Lu.

77.  The Defendant entertained an ulterior motive in using the Chinese court system and committed such act in a wilful and wrongful manner, specifically to prevent Mr. Lu from leaving China after he arrived in the country.

78.  As a direct and substantial result of the foregoing acts by the Defendant, Plaintiff has sustained actual harm and damages including, without limitation, lost of sales, legal fees and costs to defend itself against the baseless China Lawsuit and subsequent judgment and other costs related to Mr. Lu being unable to leave China.  The amount of harm and damages sustained as a direct result of the foregoing fraudulent acts is over 1.5 million dollars, the precise amount shall be determined at trial according to proof.

79.  Defendant committed the acts herein despicably, maliciously, fraudulently, and/or oppressively, with the wrongful intention of injuring the Plaintiff and Mr. Lu, and acted with an improper and/or evil motive amounting to malice, and a conscious disregard of the rights of the Plaintiff, Mr. Lu and others.

80.  Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to proof.

WHEREFORE, Plaintiff prays for judgment against the Defendant as follows:

**AS TO THE FIRST CLAIM:**

1.   For actual damages in the amount of at least 5
     million dollars, the precise amount to be
     determined at trial;

2.   For incidental and consequential damages in an
     amount to be determined at trial.

**AS TO THE SECOND CLAIM:**

1.   For actual damages, the precise amount to be
     determined at trial;

2.   For incidental and consequential damages in an
     amount to be determined at trial.

**AS TO THE THIRD CLAIM:**

1.   For actual damages, the precise amount to be
     determined at trial;

2.   For incidental and consequential damages in an
     amount to be determined at trial.

**AS TO THE FOURTH CLAIM:**

1.   For actual damages, the precise amount to be
     determined at trial;

2.   For incidental and consequential damages in an
     amount to be determined at trial.

**AS TO THE FIFTH CLAIM:**

1.   For actual damages, the precise amount to be
     determined at trial;

2.   For an order from this Court that the Plaintiff is
     entitled to be fully indemnified by the Defendant
     for any and all settlements, compromises, and
     judgments, along with any legal fees and costs
     that the Plaintiff has or will be obligated to pay

1          in connection with the Swagway Lawsuit.

2  **AS TO THE SIXTH CLAIM:**

3      1.   For actual damages, the precise amount to be
4           determined at trial;

5      2.   For an order from this Court that the Plaintiff is
6           entitled to be fully indemnified by the Defendant
7           for any and all settlements, compromises, and
8           judgments, along with any legal fees and costs
9           that the Plaintiff has or will be obligated to pay
10          in connection with the Swagway Lawsuit.

11 **AS TO THE SEVENTH CLAIM:**

12     1.   For actual damages of at least 1.5 million
13          dollars, the precise amount to be determined at
14          trial;

15     2.   For punitive damages allowed by law.

16 **AS TO ALL CLAIMS:**

17     1.   For all interest including, without limitation,
18          prejudgment interest, pursuant to statute and/or
19          contract, the precise amount to be determined at
20          trial;

21     2.   For all costs of suit incurred herein; and

22     3.   For such other and further relief as to the Court
23          seems just and proper.

24              **JURY TRIAL DEMANDED**

25     Plaintiff hereby demands a jury trial on all issues so
26 triable.

27

28

DATED: January 29, 2019

By: /s/ Joseph M. Liu
Roger C. Hsu - SBN 170589
rchlaw@att.net
Joseph M. Liu - SBN 220938
joseph@liu.net
LAW OFFICES OF ROGER C. HSU
175 South Lake Avenue, #210
Pasadena, CA 91101
Telephone:  (626) 792-7936
Facsimile:  (626) 685-2859
Attorneys for
Plaintiff Interworks
Unlimited, Inc.

Complaint